## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Mary Donahue, | Civil No. 04-3878 (DWF/AJB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| American Family Mutual Insurance Company, | |
| Defendant. | |

Timothy B. Poirier, Esq., Lowry Hill Law Offices, counsel for Plaintiff.

John Marshall, Esq., Moldawer & Marshall, PC, and David H. Oskie, Esq., Oskie, Reuter, Hamilton & Sofio, PA, counsel for Defendant.

### Introduction

The above-entitled matter came before the undersigned United States District Court Judge on January 27, 2006, pursuant to a Motion for Summary Judgment brought by Defendant American Family Mutual Insurance Company ("American Family")[1]. For the reasons set forth below, American Family's motion is granted.

---

[1] In its Reply Memorandum, American Family also requests that the Court strike Exhibits 1 and 2 of the Affidavit of Mary Donahue ("Donahue Aff.") and references thereto as impermissible hearsay. American Family also asserts that the allegations in Donahue's Complaint at paragraphs 12 and 15 are not admissible evidence because they are mere allegations. Additionally, American Family requests that the Court exclude as impermissible hearsay an exhibit that Donahue sought to introduce the day of the hearing. The Court agrees with American Family that the evidence constitutes inadmissible hearsay and mere allegations, but finds that the outcome of this case would be the same regardless of whether the evidence is excluded from the record. Therefore, the Court declines to strike the exhibits or render Donahue's evidence inadmissible.

**Background**

Plaintiff Mary Donahue is the owner of a home located at 5036 Park Terrace, Edina, Minnesota. American Family is a Write-Your-Own ("WYO") flood insurer. American Family issued a Standard Flood Insurance Policy number 19275409442003 (the "Policy") to Donahue. The Policy provided coverage for the period of April 19, 2003, to April 19, 2004. The Policy was underwritten by the United States of America, pursuant to the National Flood Insurance Program ("NFIP").

In relevant part, the Policy provided that the insured building and certain of its contents were insured against damage due to "flood." (Affidavit of David Oskie ("Oskie Aff."), Ex. 2.) The Policy defined "flood" as follows:

> 1. A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is your property) from:
>    . . .
>    b. Unusual and rapid accumulation or runoff of surface waters from any source.

(*Id.* at 1–2.) The Policy further provided that certain losses were excluded from coverage. In relevant part, the Policy excluded:

> 4. Water moisture, mildew, or mold damage that results primarily from any condition:
>    a. Substantially confined to the dwelling;
>    . . .
> 5. Water or waterborne material that:
>    a. Backs up through sewers or drains;
>    b. Discharges or overflows from a sump, sump pump, or related equipment; or
>    c. Seeps or leaks on or through the covered property;
> unless there is a flood in the area and the flood is the proximate cause of the sewer or drain backup, sump pump discharge or overflow, or seepage of water[.]

2

(*Id.* at 6.)

During the night of June 24–25, 2003, a rainstorm hit the Twin Cities, including Edina, and Donahue's home sustained damage due to water intrusion. Donahue made a claim for damages pursuant to the Policy. Donahue's insurance claim was initially investigated by the Sweet Claims Service. (Ex. M in Support of Defendant's Motion for Summary Judgment, Deposition of Mary Donahue ("Donahue Dep.") at 25.) On or about July 2, 2003, American Family's insurance adjuster prepared a Proof of Loss form stating that Donahue suffered flood damages. Donahue disputed the amount of the loss and on August 13, 2003, submitted a Proof of Loss statement, inventory, invoices, receipts and estimates to the Flood Insurance Processing Center (the "Center")[2]. Donahue's Proof of Loss Statement, signed August 12, 2003, contains the following explanation of how the loss happened: "[w]ater seeped into my home from the foundation due to ground saturation." (Oskie Aff., Ex. 4.)

On August 19, 2003, the Center interviewed Donahue by telephone regarding her claim. A Claim Activity Log (the "Log") indicates that during the telephone conversation Donahue reported that it rained heavily in her neighborhood on the date of the loss, beginning at about 11:00 p.m. and continuing until 4:00 or 5:00 a.m. (Oskie Aff., Ex. 3.) The Log also indicates that Donahue stated that she awoke to discover that her basement was flooded. (*Id.*) Additionally, the Log indicates that Donahue stated "she did not go outside to see if there was any ponding of water and is unaware of flooding in the area." (*Id.*) The Log also states that Donahue reported that her neighbors' basements did not flood. (*Id.*)

---

2   The Center is the servicing agent for the Federal Emergency Management Agency ("FEMA") with respect to flood insurance claims made under policies underwritten by FEMA, as well as WYO
(Footnote Continued on Next Page)

The Log also contained the following handwritten notes:

8-19-03  Spoke w/ Bob Sweet, who advised that he will contact the adjuster and have xxxx[3] submit a report.

8-20-03  Rec'd the adjusters report, same does not include a narrative. Called Bob Sweet, who advised that as per his conversation w/ the adjuster – there was a GCF, w/ ponding of water in the xxxx and around the xxxx. The adjuster stands behind his initial narrative.

(*Id.*)

On August 26, 2003, the Center denied Donahue's claim, stating that the claimed damages did not occur as a "direct result of a general flood condition." (Oskie Aff., Ex. 1.) Donahue then brought this lawsuit against American Family and the Director of FEMA for the National Flood Insurance Program ("NFIP"),[4] asserting that her claim for flood damages was wrongfully denied.

In her deposition, Donahue testified that none of her neighbors sustained any damage as a result of the storm in question. (Donahue Dep. at 8.) Donahue also testified that on the morning of June 25, 2003, she saw standing water in her backyard and between her house and the house next to hers. (*Id.* at 19, 20.) Donahue testified that the water was in a swale between the two homes. (*Id.*) Further, Donahue testified that she saw no standing water in the street or anywhere at the front of her house. (*Id.* at 23.) Further, Donahue testified that her property is less than two acres in area. (*Id.* at 20)

Donahue also testified that she inspected her basement the morning of June 25 and found water

---

(Footnote Continued From Previous Page)
flood insurers, including American Family. Pursuant to that authority, the Center was responsible for the investigation and adjustment of Donahue's claim.

3   Words that are illegible are marked "xxxx."

(Footnote Continued on Next Page)

throughout, ranging from below the top of the carpet to several inches deep in the area of her sump pump. (*Id.* at 11.) Donahue testified that her sump pump was operating. (*Id.*) Additionally, Donahue testified that the water intrusion was confined to the basement level of her home and that there was no direct storm damage above the basement level. (*Id.* at 16.) Donahue stated that water came through the drainage system in the utility room, not through the windows. (*Id.* at 45.) Donahue also stated that the water appeared to have saturated the walls of her house below ground. (*Id.*) Additionally, Donahue testified that an inspection of the drain tile system revealed that it was not damaged in any way. (*Id.* at 71.)

Roger Glanzer, the Utilities Superintendent for the City of Edina, stated that he is responsible for responding to storm-related emergencies in Edina. (Affidavit of Roger Glanzer in Support of Defendant's Motion for Summary Judgment ("Glanzer Aff.") at ¶ 1.) Glanzer further stated that, between June 23 and June 25, 2003, there was storm damage in parts of Edina, but no reported storm damage on Park Terrace, which is at a higher elevation. (*Id.* at ¶ 2.)

American Family seeks summary judgment, asserting that: (1) Donahue's losses did not result from a "flood" as defined by Federal law and the Policy; (2) the causes of Donahue's losses are specifically excluded by the Policy; and (3) even if a "flood" occurred on or near Donahue's property, there is no evidence that it caused damages.

---

(Footnote Continued From Previous Page)
4      The Director of FEMA for the NFIP was dismissed from the lawsuit on October 22, 2004.

**Discussion**

**I.    Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences, which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enterprise Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial.  *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**II.    National Flood Insurance Program ("NFIP")**

The NFIP is a federally supervised and guaranteed insurance program administered by FEMA pursuant to the National Flood Insurance Act ("NFIA").  44 C.F.R. §§ 59.1–77.2.  Congress created the NFIP "to provide affordable flood insurance on a national basis and to discourage the construction

of new structures in flood prone areas." *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 388 (9th Cir. 2000); 42 U.S.C. § 4001(a). FEMA developed the WYO program to assist it in marketing flood insurance. *Flick*, 205 F.3d at 389. Private insurance companies that issue standard flood insurance policies under the WYO program are fiscal agents of the United States. 42 U.S.C. § 4071(a)(1); 44 C.F.R. § 62.23. The coverage is subject to NFIP regulations, and claims are paid out of funds drawn from the National Flood Insurance Fund. 42 U.S.C. § 4017(a). Federal common law controls the interpretation of insurance policies issued pursuant to the NFIP. *Sodowski v. Nat'l Flood Ins. Program*, 834 F.2d 653, 655 (7th Cir. 1987). If the policy language is clear and unambiguous, its natural meaning controls. *Id.*

### A. Definition of Flood

American Family asserts that Donahue's claimed losses did not result from a "flood" as defined by federal law and the Policy. American Family asserts that Donahue cannot show that two or more properties were all or partly inundated with water. American Family contends that Donahue has not offered any opinion as to the depth of the standing water she observed, other than to indicate that the water was not deep enough for her to have considered it "ponded." Further, American Family asserts that there is no evidence that the area in which Donahue describes having seen standing water is "normally dry land area." American Family contends that Donahue acknowledges that the area where she observed the water was a "swale" between her house and her neighbor's house. Additionally, American Family asserts that there is no evidence of any substantial rapid accumulation of surface waters or runoff from any source.

7

American Family also asserts that Donahue cannot rely on statements by casualty agents responding to her claim as evidence that her property had sustained a flood. American Family cites 44 C.F.R. § 61.5(e), which states, "[a]ccordingly, representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program's regulations, are void, and the duly licensed property or casualty agent acts for the insured and does not act as agent for the Federal Government, the Federal Emergency Management Agency, or the servicing agent." Pursuant to that regulation, American Family asserts that the statements made by casualty agents upon which Donahue relies are not binding on American Family as a matter of law and should be disregarded.

Donahue, on the other hand, asserts that the fact that Edina received rainstorms between June 23 and June 25, 2003, provides sufficient evidence to conclude that heavy rains had inundated the area. Donahue also contends that she observed standing water between her home and her neighbor's home after the storm. Further, Donahue asserts that the area between the two homes is normally dry. (Affidavit of Mary Donahue ("Donahue Aff.") at ¶ 3.) Additionally, Donahue contends that the Court should assume that the Log entry "GFC" stands for "a general condition of flooding." (Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment ("Pl's Opp. Mem.") at 5.)

The parties agree that Donahue must show that "two or more properties (at least one of which is [Donahue's] property)" suffered "[a] general and temporary condition of partial or complete inundation . . . from . . . [u]nusual and rapid accumulation or runoff of surface waters from any source[.]" (Oskie Aff., Ex. 2 at 1–2.) Neither the Policy nor the regulations define "inundation." *See* 44 C.F.R. § 59.1. "Inundation" commonly means "a rising and spreading of water over land not

8

usu[ally] submerged." *Mathews v. Farmers Ins. Co. of Oregon*, No. 04-6117-AA, 2005 WL 1565261, *8 (D. Or. June 27, 2005) (quoting Webster's Third New Int'l Dictionary (unabridged ed. 1993)).

The Court finds that, as a matter of law, Donahue cannot show that two or more properties were all or partly inundated with water. The Court rejects Donahue's assertion that because Edina received rainstorms between June 23 and June 25, 2003, the trier of fact may conclude that heavy rains had inundated the area. Here, Glanzer stated that although parts of Edina sustained storm damage, there was no reported storm damage on Park Terrace, which sits at a higher elevation than other areas. (Glanzer Aff. at ¶ 2.) Thus, the evidence here shows that Park Terrace, where Donahue resides, did not sustain storm damage even though Park Terrace is part of Edina.

The Court rejects Donahue's assertion that the Court should assume that "GFC" stands for "a general condition of flooding" without any supporting evidence. Moreover, the Court finds that the plain language of 44 C.F.R. § 61.5(e) renders "void" any "representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program's regulations." Thus, the Court finds that statements such as "GFC" in the Log do not show that Donahue demonstrated that Donahue's losses resulted from a flood as defined by the Policy.

Further, without knowing the depth of the standing water, it is unclear whether the water "inundated" the properties. Moreover, Donahue acknowledges that the area in question was a "swale" between her house and her neighbor's house. A "swale" is "a low-lying or depressed and often wet stretch of land." Merriam-Webster's Collegiate Dictionary 1189 (10th ed. 1998). Because water is expected to collect in a swale, Donahue cannot establish that the existence of standing water in a swale

9

revealed a partial inundation even if Donahue contends that the area is normally dry. Additionally, there is no evidence of any substantial rapid accumulation of surface waters or runoff from any source. Viewing the evidence in the light most favorable to Donahue, the Court finds that Donahue cannot establish that her losses resulted from a "flood" as defined by the Policy.

**B.     Exclusions**

American Family next asserts that the conditions which caused Donahue's damages were substantially confined to her dwelling and thus excluded by the Policy. Donahue does not rebut American Family's assertion. Additionally, American Family asserts that the cause of Donahue's damage was the overflow of a sump pump as the result of seepage caused by heavy rainfall, another exclusion under the Policy. Donahue admits that water overwhelmed her sump pump and that ground water seeped through her foundation. However, Donahue asserts that both situations are covered by the Policy if there is first a determination of "a flood in the area." (Oskie Aff., Ex. 2 at 1–2.)

First, the Court finds that the conditions that caused Donahue's damage were substantially confined to her dwelling, and thus excluded by the Policy. Here, there is no evidence that the conditions that caused Donahue's damages extended beyond her own home or property. *See Bull's Corner Restaurant, Inc. v. Director of FEMA*, 759 F.2d 500, 503–04 (5th Cir. 1985) (affirming the district court's conclusion that the damage resulted primarily from a condition solely related to appellant's premises where only one adjacent property experienced water entry). Further, there is no evidence that her street was submerged in water or that water entered any other home on her block. Although some other areas of the Twin Cities may have been subjected to flooding as defined by the Policy, there is no evidence that Donahue's immediate neighborhood experienced flooding. *See Mussoline v. Morris*,

10

692 F. Supp. 1306, 1316 (S.D. Fla. 1987) ("the correct focus must be upon the plaintiff's immediate neighborhood, rather than the Miami area, and upon the amount of damage sustained by neighborhood premises, to determine whether a general condition of flooding was present.")  On this record, the Court concludes that the conditions that caused Donahue's damages were substantially confined to her dwelling as a matter of law and are excluded from coverage under the Policy.

Second, the Court finds that the cause of Donahue's damage resulted from water that discharged or overflowed from a sump pump or that seeped or leaked on or through the covered property—additional exclusions under the Policy.  Donahue correctly asserts that both situations are covered by the Policy if there is first a determination of a flood in the area.  However, the Court has determined that Donahue cannot show that there was a flood in the area.  Therefore, the exclusions apply to bar Donahue's claim.

### C. Causation

Finally, American Family asserts that even if a flood occurred on or near Donahue's property, there is no evidence that the flood caused Donahue's damages.  American Family contends that the only evidence of water on Donahue's property was the water standing in the swale between her house and her neighbor's house on the morning of June 25.  American Family contends that, on this evidence, the Court cannot determine whether the water entered Donahue's home, much less that the water entered as a result of "unusual and rapid accumulation or runoff of surface waters."  (Oskie Aff., Ex. 2 at 1–2.)

The Court finds, that on this evidence, Donahue cannot demonstrate that a flood caused the damage to her home.  Here, the only evidence of water on Donahue's property was the water standing in the swale between her house and her neighbor's house on the morning of June 25.  There is no

11

evidence as to how much water accumulated in the swale or whether that water made its way into Donahue's home. Thus, on this evidence, no reasonable trier of fact could conclude that the water entered Donahue's home as a result of "unusual and rapid accumulation or runoff of surface waters." (*Id.*)

## Conclusion

Accordingly, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion for Summary Judgment (Doc. No. 31) is **GRANTED**.

2. Plaintiff's Complaint (Doc. No. 2) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 6, 2006            s/Donovan W. Frank
                                DONOVAN W. FRANK
                                Judge of United States District Court